By the Court.
Freedman, J.
The action is for a personal injury. The plaintiff’s amended complaint alleges : (1) That the plaintiff was at the time of the injury, in the employ of the defendant as an operator on a card cutting machine; (2) that such machine was out of order at the time, as was well known to the defendant, and was in a condition dangerous to be used ; (3) that without negligence on her part and without knowledge that the machine was defective, she was injured by a knife connected with the machine; and (4) that such injury was caused by the negligence of the defendant in furnishing to plaintiff, while so employed, a machine without proper protection against danger.
The answer put in issue all the material allegations of the complaint and set up that whatever injuries plaintiff sustained were the result of her own negligence and the negligence of her fellow servants.
At the trial, the evidence showed that the plaintiff, who, at the time of the injury was about sixteen or seventeen years of age, had at that time been in the employ of the defendant in its card manufactory for about six years, and at work on the particular machine complained of for about six or eight months, and that she was fully acquainted with its operation and competent to operate it. The ma *139 chine in question cut cards from card strips cut by another machine, and the strips were passed by the plaintiff into the machine in question, through rollers which drew each strip under a Imife or punch which moved vertically. The machine was operated by steam, and power was supplied from the main shafting by means of a fly-wheel. The machine was started by plaintiff putting her foot on a treadle which connected the wheel with the vertical knife. It was stopped by plaintiff taking her foot off the treadle when the knife became disconnected and the wheel continued to revolve without moving the knife. In operating the machine it sometimes happened that the Imife got stuck' and tore the cards, and then it became necessary to get the pieces of torn or broken cards out from under the knife before plaintiff could continue her work. So far there was no dispute as to the facts.
The plaintiff then went on and showed that she had repeatedly extracted with her fingers, bits of torn cards from the machine, and the knife on such occasions had always remained stationary after she had raised it. On the occasion complained of, the knife got stuck, plaintiff raised it, and thereafter, while plaintiff was engaged in extracting torn cards, the knife came down without any apparent cause and severely injured her right hand. She also testified that she had on one or two prior occasions complained to the superintendent and the machinist of defendant’s factory that the Imife would stick and in consequence thereof spoil her work, and that she had been told to do the best she could. This was the full extent of any complaint ever made by the plaintiff to any one.
On the part of the defense it was shown, among other things, by a number of witnesses that the machine was a suitable, proper and safe one for the work required to be done by it; that a large number of similar machines had been operated in the same room for a number of years and by a large number of girls and women, and that no accident beyond the scraping of a finger nail in one or two instances had ever occurred to any one in the course of *140 their work; that, whenever a knife got stuck, it was not in consequence of any defect in the machine, but either because the knife got dull and for that reason would tear the cards, or because the operator did not feed the card strips in properly and squarely and in the right direction; that all the operators were from time to time warned to be careful, and that in case a knife got stuck, the duty of every one of them was to call a certain machinist who was on hand in the room for the purpose of' freeing the knife and seeing to it that the machine should work properly, and who, whenever thus called upon, did free the knife and did every thing else which was necessary to be done to make the machine run properly ; that the sticking of the knife in the machine operated by the plaintiff on the day of the injury, was caused neither by the defect nor ’ by want of repairs in the machine, for the machine was, on examination both before and after the injury to the plaintiff on the day in question, found in perfect order and required and received no repairs ; that the plaintiff had never at any time made any other complaint concerning the machine than that the knife would stick and spoil her work ; that the same machine had been used by the plaintiff for more than a week previous to her injury without any difficulty or complaint whatever ; that on the day of the injury, when the knife in plaintiff’s machine got stuck, the plaintiff neglected to call the machinist whose duty it was to free it and to look after the machine, but undertook to do these things herself, contrary to her instructions and duty in the premises ; that as soon as the operator’s foot is taken off the treadle of such a machine, the machine is thrown out of gear and the knife, if up, cannot possibly be made to descend except by setting the treadle in motion again, and that consequently the plaintiff must have set the treadle in motion again, after she had stopped the machine, and thus made the knife to come down while her hand was yet under it.
In addition to all this, there was evidence given by several girls, co-servants of the plaintiff, to the effect, that *141 at the time of the injury there was some skylarking going on between a girl named Maggie Haulton and the plaintiff, in consequence of which plaintiff failed to give proper attention to her work, and that on the happening of the injury Maggie Haulton exclaimed that it was her fault.
Upon a careful review of all the evidence on both sides, I have satisfied myself that both upon the question of defendant’s negligence and the question of plaintiff’s contributory negligence, the preponderance of the evidence is in favor of' the defendant. There is no evidence of any defect, unless the tendency of the knife to get stuck was one, and that, it seems to me, was not so much a defect as a contingency which was to be expected and for which the plaintiff should have been on the watch and guard. But if it did constitute a defect of which the defendant had notice, it was one concerning which the plaintiff had equal, if not better knowledge. In such a case the master is not liable, for while the rule that the master is bound to furnish suitable and safe machinery is well established as a general proposition, it is equally well settled, as an exception to the rule, that the master may, as against his servant, choose his own appliances, and that if the risk be apparent, the servant assumes it (White v. Sharp, 27 Hun, 94, recently affirmed by the court of appeals; Gibson v. Erie R. R. Co., 63 N. Y. 449).
Consequently in order to recover in such a case the servant must establish three propositions, viz :
(1) That the machine or appliance was defective ; (2) that the master had knowledge or notice or ought to have known; and (3), that servant did not know, and had not equal means of knowing with the master (Loonam v. Brockway, 3 Rob. 74 ; Wright v. N. Y. Central R. R. Co., 25 N. Y. 562 ; De Graff v. N Y. C. & H. R. R. R. Co., 76 Ib. 125 ; De Forest v. Jewett, 88 Ib. 264 ; White v. Sharp, 21 Hun, 94).
This doctrine has been uniformly upheld in England and in America since the case of Seymour v. Maddox (5 Eng. L. & E. 265), where the proprietor of a theatre v/as *142 sued by an actor for injuries sustained by insufficient lighting of the stage, and falling through an open trapdoor. The court held that the actor could not recover, because he voluntarily exposed himself to the danger, of which he had the same knowledge as the defendant himself.
Thus, in Hayden v. Smithville Manufacturing Co. (29 Conn. 548), the court explicitly declared as follows : ‘ ‘ Every manufacturer has a right to choose the machinery to be used in his business, and to conduct that business in the manner most agreeable to himself, provided he does not thereby violate the law of the land. He may select his appliances and run his mill with old or new machinery, just as he may ride in an old or a new carriage, navigate an old or new vessel or occupy an old or new house, as he pleases. The employee, having knowledge of the circumstances, and entering his service for the stipulated reward, cannot complain of the peculiar tastes and habits of his employer, nor sue him for damages sustained in and resulting from that peculiar service. .... An employee, having knowledge, cannot claim indemnity except under particular circumstances. He is not secretly or involuntarily exposed, and likewise is paid for the exact position and hazard he assumes ; and so he may terminate his employment, when, from unforeseen perils, he finds his reward inadequate or unsatisfactory.”
It is true the rule is not rigidly enforced against persons who are too young in years and too inexperienced in the service to appreciate the dangers to which they are exposing themselves (Coombs v. New Bedford Cordage Co., 102 Mass. 572 ; Laning v. N. Y. Central R. R. Co., 49 N. Y. 521). And especially if the employer permits the danger to exist in violation of the statute law (Britton v. Great Western Cotton Co., L. R. 7 Exch. 130).
But in the case at bar, no such reason exists for relaxing the rule. The defendant violated no statutory provision, and the plaintiff, though only sixteen, or. seventeen years of age, had an experience of six years in the busi *143 ness. The case, therefore, comes fully within the decision of the court of appeals in De Graff v. N. Y. C. & H. R. R. R. Co. (76 N. Y. 125), where it was held that the fact that the employee is a minor, does not, if he is of age sufficient and is competent for the service in which he is employed, affect the duty or the liability of the employer to him ; that the risks and dangers incident to the business are an element of the employment, and the employee cannot claim, on account of infancy, to be relieved from the consequences of such risks or dangers.
In the next place, plaintiff’s injury was rot the natural consequence of the sticking of the knife. If that was a defect, it was cured by the plaintiff herself before she put her hand under the knife. According to her own showing she ran the knife up and then stopped its movement by taking the foot off the treadle. The machine then was as harmless as a sewing machine. For all the testimony including that of the plaintiff upon this point is to the effect that as long as the treadle was not put in motion again, the knife could not come down again, and that the treadle could not have been put in motion again by some, other part of the machinery. The knife, however, did come down again, and, in the absence of any other explanation, it must be assumed that its downward motion was caused by the plaintiff putting the treadle in motion again while she still had her hand under the knife. In the nature of things, no other conclusion can be reached, in the absence of proof of some circumstance, no matter how slight, suggesting some other theory, and no such proof is in the case. Where, then, was the negligence of the defendant which caused the injury and which the plaintiff was bound to point out and to establish by a preponderance of proof ? The burden was on her throughout to establish by a preponderance of evidence that the injury complained of was the result of defendant’s negligence, exclusive of any other primary cause. This is too familiar a rule to require the citation of authorities in its support. To say the very least, therefore, the case made out against the defendant was as *144 consistent with the theory of plaintiff’s contributory negligence as with the theory of defendant’s negligence, and in such a case it is well settled that the plaintiff cannot recover (Cordell v. N. Y. C. & H. R. R. R. Co., 75 N. Y. 330 ; Desmond v. Rose, 46 Super. Ct. 569 ; Glendening v. Sharp, 22 Hun, 78).
For the reasons stated, I am of the opinion that the defendant, at the close of the evidence on both sides, was entitled to the direction of a verdict in its favor, and that the denial of the defendant’s motion in this respect constituted error.
Other interesting and grave questions are presented by the exceptions taken by the defendant to the charge and to the refusal of the court to charge certain requests, but as the examination already made calls for a new trial, it is unnecessary to notice or discuss them
The judgment and order appealed from should be reversed and a new trial ordered, with costs, to the appellant to abide the event.
Sedgwick, Ch. J., and Van Vorst, J., concurred.