MARY GALVIN, as Administratrix, etc., Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

R., plaintiff's intestate, was in the employ of a contractor with the city, as the driver of a cart delivering coal at the court-house, in the city of New York. While engaged in this work a heavy iron grating, used to cover a hatchway in the sidewalk leading to the basement of the court-house, through which the coal was being delivered, fell upon him causing his death. In an action to recover damages it appeared that, so far as was known, no person saw the deceased at the precise moment of the accident. Plaintiff offered to show that by the known and established mode of doing the business the deceased was called upon, in the performance of his duty, to go into the basement to procure the signature of some city official to a ticket showing the weight of the load he had to deliver. This was excluded. *Held*, error.

Plaintiff's evidence tended to show that the grating which hung on hinges, and was thrown back against the building when coal was being delivered, when so thrown back was dangerous and liable to inflict injury upon those engaged in that business unless securely fastened, and that the appliances furnished by the city for that purpose were wholly inadequate. Many loads of coal had been safely delivered down the hatchway. *Held*, that the question as to the negligence of the defendant and that of the deceased were for the jury and a nonsuit was error; that the evidence authorized the inference that deceased was properly, in the discharge of his duties, in the place where he received his injuries, and had not omitted the precautions a prudent man would take in the presence of a known danger.

It appeared that the grating was raised by P., the driver of the cart preceding that of the deceased, with the help of others. *Held*, that, conceding P. was negligent, this did not exempt the city from liability; that the rule exempting a master from liability to a servant for the negligence of a co-servant did not apply, as they were not servants of the city.

*Galvin* v. *Mayor, etc.* (22 J. & S., 295) reversed.

(Argued December 20, 1888; decided January 15, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 14, 1887, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial. (Reported below, 22 J. & S. 295.)

This action was brought to recover damages for alleged negligence causing the death of Richard Galvin, plaintiff's intestate.

The material facts are stated in the opinion.

*E. J. Myers* for appellant. In an action for negligence, to justify a nonsuit on the ground of contributory negligence, the undisputed facts must show the omission or commission of some act which the law adjudges negligence; the negligence must appear so clearly that no construction of the evidence or inference drawn from the facts will warrant a contrary conclusion. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Kain* v. *Smith*, 89 id. 375, 378; *Munroe* v. *Third Ave. R. R. Co.*, 50 Super. Ct. 114, 115; 52 id. 382, 366.) The jury could properly infer from the testimony that the deceased left his horse's head and went to the hatchway to look at the cart, to properly back up to the hatchway, to see if he could dump his load in the hatchway, to fasten the grating against the danger of which he had been warned. ( *Williams* v. *Syracuse Iron Co.*, 31 Hun, 392.) The law presumes, in the absence of all proof tending to show the contrary, that every person uses ordinary and reasonable care for the safety of his own life and limb. (*Dorland* v. *N. Y. C. & H. R. R. R. Co.*, 30 Hun, 382; 19 Week. Dig. 76; *Schwaudner* v. *Buge*, 33 Hun, 186, 190; *Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 65, 69.) The deceased had a right to assume that the driver preceding him secured the grating. (*Steiverman* v. *White*, 48 Super. Ct. 525, 526; *Kain* v. *Smith*, 89 N. Y. 375, 384.) The question of care, *i. e.*, that the intestate was free from negligence, in view of the fact that no one saw the accident, must be left to the jury. (*Nowell* v. *Mayor, etc.*, 52 Super. Ct. 382; *Dorland* v *N. Y. C. & H. R. R. R. Co.*, 19 Week. Dig. 76; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 364; *McGuire* v. *Spence*, 91 N. Y. 303; *Rehberg* v. *Mayor, etc.*, Id. 137; *Greany* v. *L. I. R. R. Co.*, 101 id. 419, 423; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72.) The defendant

is liable for the negligence in not properly fitting and caring for the grating, even if another was also instrumental in causing the accident. (*Merrit* v. *Fitzgibbons*, 29 Hun, 634; *Ring* v. *Cohoes*, 77 N. Y. 83.) The learned trial judge erred in excluding proof of what was the usual course and practice of drivers in delivering coal, and what was necessary for the driver to do in properly performing his duty. (*Williams* v. *Syracuse Iron Works*, 31 Hun, 321, 395, 396.)

*David J. Dean* for respondent. The injury of the plaintiff's intestate was caused by the negligence of his fellow servant, and the defendant is not liable therefor. (*Malone* v. *Hathaway*, 64 N. Y. 8; *Wright* v. *Central Railroad*, 25 id. 562; *Hoffnagle* v. *N. Y. C. R. R. Co.*, 55 id. 608; *Benzing* v. *Steinway*, 101 id. 552.) The master does not owe to his servants the duty to furnish the best known or conceivable appliances; he is simply required to furnish such as are reasonably safe and suitable. (*Marsh* v. *Chickering*, 101 N. Y. 400; *Burke* v. *Witherbee*, 98 id. 562; Sherman & Redfield on Neg. § 92.) The burden was upon the plaintiff to prove that he did not contribute to cause the accident by neglect on his part. (*Hart* v. *H. R. B. Co.*, 84 N. Y. 56; *Reynolds* v. *N. Y. C. R. R. Co.*, 58 id. 248; *Cordell* v. *N. Y. C. R. R. Co.*, 64 id. 535.) Care on the part of one seeking to hold another liable for neglect, must be established by proof. Where there is no proof of such care, the court should nonsuit. The absence of contributory negligence will never be presumed. (*Cordell* v. *N. Y. C. R. R. Co.*, 64 N. Y. 535; *Riceman* v. *Havemeyer*, 84 id. 650; *Dubois* v. *Kingston*, 102 id. 224; *Belton* v. *Baxter*, 54 id. 245; *Barker* v. *Savage*, 45 id. 191.) The plaintiff's claim that defendant was liable for "not properly fitting and caring for the grating, even if the negligence of another was instrumental in causing the accident, is untenable." (*Ring* v. *Cohoes*, 77 N. Y. 83; *Searles* v. *M. R. R. Co.*, 101 id. 661; *Taylor* v. *City of Yonkers*, 105 id. 209.)

RUGER, Ch. J.   We think this was a case for the jury in all of its aspects.   The plaintiff's intestate was the driver of a cart employed to deliver coal at the court-house in the city of New York.   While engaged in the performance of this duty a heavy iron grating fell upon him and inflicted injuries from which he subsequently died.   This grating hung on hinges and was used to cover a hole or hatchway in the sidewalk leading into the basement of the court-house, through which the coal was to be delivered.   While the work of delivery was in progress this grating was intended to be thrown back against the side of the building.   It then stood nearly upright, and when unfastened was liable to be thrown down by the slightest jar or interference.   Ordinarily such a situation would not seem likely to threaten any danger except to the cart from which the coal was to be dumped into the hatchway.   It is not obvious why the driver should necessarily be in a position to receive injury; but this was a question to be determined as one of fact by the jury.

We infer from several offers made by the plaintiff that she intended to show that her intestate was called upon, in the performance of his duty, to go into the basement to present and procure the signature of some official of the city to a ticket showing the weight of the load he had to deliver.   This evidence the court below, upon the objection of defendants, excluded.   We can see no valid ground for its rejection.   The evidence tended to disclose a reason for the presence of the deceased at the place where he received his injuries, and bore upon the question of his alleged negligence.

The trial court held that the plaintiff could prove only what the deceased actually did, and not what the usual and customary mode of delivering coal required him to do.   The evidence tended to show a known and established mode of doing the business which was the subject of investigation, and was clearly competent.

No question arises as to the defendant's negligence, and it was admitted on the trial, that it owned the court-house, and was charged with keeping and maintaining the same and its

appurtenances in a safe and suitable condition, free from danger to those lawfully in and about the building.

The evidence tended to show that the grating, while thrown back to permit the dumping of coal, was dangerous and liable to inflict injury upon those engaged in that business, unless securely fastened by a hasp, hook or other contrivance. It also tended to show that the appliances furnished by the city were wholly inadequate to effect the purpose. A case of substantially undisputed negligence was made out against the defendant.

Upon the trial the plaintiff was nonsuited upon two grounds, viz., first, that negligence producing the injury was imputable to Purcell, a co-servant of the deceased, for which the defendant was held not to be liable; and, second, that the deceased was himself, as matter of law, guilty of contributory negligence. Purcell and the deceased were in the employ of the contractor delivering the coal, not of the city; Purcell, who was with the load preceding that of the deceased, with the help of others, raised the grating.

We are not aware of any rule which exempts a wrong-doer from the consequences of his own negligence, because some stranger discovers it and omits to repair it. Purcell was not the servant of the city, and owed it no duty to put the court-house in condition to receive coal safely. This duty the law imposed upon the city and it was not excused from its performance by the fact that third persons had observed its non-performance and had omitted to repair its neglect. (*Benzing* v. *Steinway*, 101 N. Y. 547; *Webster* v. *Hud. R. R. R. Co.*, 38 id. 260; *Barrett* v. *Third Ave. R. R. Co.*, 45 id. 628.) The familiar rule that a master is not liable to his servant for damages occasioned to him through the negligence or unskillfulness of his co-servant has no application to the facts of this case, and cannot be invoked to shield the defendant from the consequences of its negligence. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 541.)

A more serious question grows out of the alleged negligence of the plaintiff's intestate, arising from the fact that no one

observed him, at the precise moment of the accident, or was able to testify as to what he was doing when the grating fell upon him. Under the strict rule of evidence adopted by the trial court all proof of what he was probably attempting to do, in the customary manner of delivering coal, was excluded from the consideration of the jury, and it was then held that there was no evidence from which the absence of contributory negligence could be inferred. The ruling of the trial court seemed to have been based upon the assumption that the proof showed the deceased unnecessarily in the place where he was injured; and that there was nothing in the circumstances appearing on the trial from which a jury was authorized to infer that he was necessarily or properly there in the performance of the duty he had to discharge. It is by no means indispensable to a recovery in such a case that an injured party should always produce eye-witnesses as to the manner in which an accident occurred; for in many cases this is impossible and is almost always difficult; but it does not follow that a recovery cannot be had in such cases.

It has been said that, " in an action for personal injury from negligence of the defendant, the absence of any fault on the part of the plaintiff may be inferred from the circumstances in connection with the ordinary habits, conduct and motives of men," and that " the character of the defendant's negligence may be such as *prima facie* to prove the whole issue." (*Johnson* v. *H. R. R. Co.*, 20 N. Y. 65.)

We think the jury in this case had the right to infer, from all the facts, that the deceased was called to the place where he received his injuries in the performance of his duty, and had not omitted the precautions which a prudent man would take in the presence of a known danger. (*Palmer* v. *Dearing*, 93 N. Y. 7.)

The proof did not show affirmatively a want of care on the part of the deceased, and was quite consistent with the exercise of due care and caution in approaching the grating. Many loads of coal had been safely delivered down the hatchway, under the same circumstances which existed on the

morning of the accident, and the driver had, therefore, some reason for supposing that the grating was sufficiently safe to afford him an opportunity of doing what he was apparently attempting to do. That he had some reason for taking the position where he was injured is altogether probable, and it is unreasonable to suppose that he carelessly placed himself in a position to be injured.

The evidence shows that he was observed immediately before the accident standing near his cart, which was then backed to within a foot of the hatchway where the coal was to be dumped. A moment after another coal driver coming up out of the hatchway was struck in the breast by the feet of the plaintiff's intestate as he was borne to the earth by the grating. What happened in this short interval of time was not observed by any eye-witness, and we think it was within the province of the jury to say, in view of all the circumstances of the case, the usual course of the business performed, and the motives which ordinarily influence men in their actions, how the deceased happened to be within reach of the grating. Many well-grounded inferences are possible from the evidence. His duty called him toward the grating, for it was there that his work was to be performed. Extreme caution would have led him to examine it and to observe how it was fastened before backing his load under it. He might have discovered that it was not fastened, and advanced to it for the purpose of obviating the consequences of the defendant's neglect. He may have been engaged in the act of reaching for the rope which was said to pertain to the grating, with a view of fastening it to the spike in the wall, or, possibly, he was descending the hatchway to get his ticket signed, or to remove coal which obstructed the delivery of his load. It is quite improbable that he was there unnecessarily, or in careless disregard of the danger he incurred. The inferences we have suggested were those which might reasonably have been deduced from the evidence by the jury, and we think it was error to take the case from it.

The rule in cases of nonsuit requires that upon appeal all

contested facts shall be deemed established in favor of the plaintiff, and the most favorable inferences to be drawn from the evidence must be assumed in his favor. (*Rehberg* v. *Mayor*, *etc.*, 91 N. Y. 141.) In view of all the circumstances of the case it was, therefore, we think, the province of the jury to determine the degree of care which the deceased was bound to exercise in respect to the apprehended danger, to infer the motive which led him to the hatchway, and to pass upon the question of negligence, and the court erred in preventing such determination.

The judgments of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur except PECKHAM and GRAY, JJ., who dissent on the ground that there was no evidence showing or tending to show negligence in the defendant, and no evidence that the deceased was himself free from fault, or from which such an inference could properly be drawn by a jury, and that a verdict for plaintiff in such case would be based upon pure speculation.

Judgment reversed.