made December 18, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit.

*Thomas Young* for appellant.

*E. B. Hinsdale* for respondent.

Agree to affirm; no opinion.

All concur, except BRADLEY, J., not voting and BROWN, J., not sitting.

Judgment affirmed. _____

MARGARET RIORDAN, as Administratrix, etc., Appellant, *v.* THE OCEAN STEAMSHIP COMPANY, of Savannah, Georgia, Respondent.

In an action to recover damages for the alleged negligent killing of R., plaintiff's intestate, it appeared that he was in defendant's employ, engaged in tiering up freight in the hold of one of its vessels and received the injuries which caused his death, while coming up from the hold on an elevator used in the work, by being caught between the elevator and the combing of the hatch. There was room enough upon the elevator for him to stand without being exposed to danger, and there was no evidence from which it could be inferred that he used the precautions of a prudent man. At the request of the plaintiff's counsel the court charged that "if the deceased was rightfully on the elevator at the time of his injury, in the absence of the testimony of an eye witness of the accident, the jury may assume that he received his injury in the performance of his duty and had not omitted the precautions which a prudent man would take in the presence of known danger." *Held*, error.
*Galvin* v. *Mayor, etc.* (112 N. Y. 223), distinguished.

(Argued February 27, 1891; decided March 17, 1891.)

APPEAL from order of the General Term of the Court of Common Pleas for the city and county of New York, made June 16, 1890, which reversed a judgment in favor of plaintiff entered upon a verdict and granted a new trial.

The following is the opinion in full:

"This action was brought to recover damages for the death of the plaintiff's intestate.

"On the 31st day of January, 1888, Michael Riordan, the deceased, was engaged, as a servant of the defendant, in tier-

ing up freight in the hold of the steamship 'Chattahoochee,' in the city of New York. The freight was let down into the hold by an elevator which was worked by a winch. The winch was set in motion and stopped by means of a lever operated by a man who stood by its side. He got his word to raise the elevator from the men in the hold who discharged the freight therefrom. In the hold there was a light, with a large reflector behind it, opposite the elevator. The elevator had just descended into the hold of the vessel with a load of freight as the call for dinner was given. The four men in the hold thereupon got upon the elevator and gave the word to hoist. The man at the winch pulled the lever, but could not raise the elevator for the reason that it was so heavily loaded. He thereupon told them to remove the freight. They then took off all the freight but two barrels, and three of them again got upon the elevator, and the deceased gave the word to hoist. The elevator commenced to ascend slowly and had gone a distance of about seven feet when a cry to stop was raised. Thereupon the elevator was immediately stopped by the winchman, and Riordan was discovered to be caught between the elevator and the combing of the hatch. He was then released and with the elevator brought up to the deck of the vessel. His injuries were of that character that he soon thereafter died. The deceased had been in the service of the defendant for over eight months. The platform of the elevator was about seven feet in length and five in width, and with the two barrels on it there was ample room for all of the men to stand upon it and be clear of the hatch.

"Two of the men, who were with Riordan in the hold of the vessel at the time that he was caught, were called as witnesses on the trial, and they testified that they could not tell what position he was in on the elevator, or where he was standing at the time that he was caught; that they were standing near the middle of the elevator, and the first that they noticed of him was after he was caught. No evidence was given tending to show how he came to be outside of the edge of the platform of the elevator so as to be caught under the combing of the hatch. We are thus left in ignorance as to the cause of the accident.

"The question of his contributory negligence had consequently become important, and was sharply litigated.   Thereupon and at the conclusion of the trial the plaintiff requested the court to charge that 'if the deceased was rightfully on the elevator at the time of his injury, in the absence of the testimony of an eye witness of the accident, the jury may assume that he received his injury in the performance of his duty, and had not omitted the precautions which a prudent man would take in the presence of known danger.'   This request was granted by the court, and an exception was taken by the defendant.

"There is no question but that Riordan had the right to be upon the elevator; that he was in the employ of the defendant, and was injured whilst in the discharge of his duty as such employe.   The vice in the charge is that the instruction authorized the jury to assume, in the absence of the testimony of·an eye witness, that Riordan had not omitted the precautions which a prudent man would take in the presence of known danger, thus permitting the plaintiff to establish her cause of action without evidence.   We do not understand such to be the law.

"The plaintiff, in support of his request, relies upon the case of *Galvin* v. *Mayor, etc.* (112 N. Y. 223).   In that case the plaintiff's intestate was engaged as driver of a cart delivering coal at the court-house.   There was a heavy iron grating used to cover a hatchway in the sidewalk leading to the basement of the court-house, through which the coal was delivered. The grating hung upon hinges and was thrown back against the building, but was not fastened as it should have been.   It fell upon him, causing his death.   No person saw the grating at the instant it fell.   Evidence was offered and excluded by the trial court to show that by the known and established mode of doing the business the deceased was called upon, in the performance of his duty, to go into the basement through the hatchway, to procure the signature of some official to a ticket showing the delivery of the load of coal.   It was held, Chief Judge RUGER delivering the opinion of the court, that this evidence was competent, and had it been received the

inference might have been properly drawn from the facts and circumstances surrounding the case that the deceased was in the discharge of his duty in the place where he received his injuries, and had not omitted the precautions a prudent man would take in the presence of known danger.

"A very different question was there involved from the one here under consideration. In that case the grating was raised and not fastened as it should have been. It was left standing in a dangerous condition, without the knowledge of the deceased. It was his duty to enter the basement and get a receipt for the delivery of his load of coal, and whilst in the discharge of this duty the grating fell upon him, causing his death. These are the inferences which might properly be draw from the evidence had it not been excluded, and under these facts he had the right to suppose that the grating was securely fastened, and that he was not, therefore, guilty of contributory negligence. But whilst inferences may properly be drawn from the surrounding facts and circumstances, it does not follow that we may assume facts not proven. Between the two propositions, the one presented by the case referred to, and the other by the charge excepted to, there is a wide difference. One is an inference drawn from facts; the other is an assumption without facts.

"In the case of *Dobbins* v. *Brown* (119 N. Y. 188), the same judge who delivered the opinion in the *Galvin* case says that 'Any inference that the accident happened in the manner suggested would, it seems to us, have been substituting conjecture for proof, and violate the rule requiring proof always to be made the basis for a recovery;' and again, he says: 'Whatever might have been the cause of death, it was for the plaintiff to show how it occurred. The burden of proof lay upon her to establish the liability of the defendants, and to do this she was bound to show affirmatively not only the absence of contributory negligence on the part of her intestate, but the negligence of the defendant with respect to some matter which caused the injury complained of.'

"We are not permitted to guess or assume that the deceased was free from fault because he was injured, or that every person will take care of himself from regard to his own life

and safety, for the reason that human experience shows that persons exposed to danger will frequently forego ordinary precautions of safety. It is incumbent upon the plaintiff to show, by a preponderance of evidence, such facts and circumstances as will satisfy the minds of the jurors that the deceased exercised proper care and prudence, and did not omit the precautions of a prudent man under the circumstances. The law demands proof and not mere surmises. (*Bond* v. *Smith*, 113 N. Y. 378; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 id. 199.)

"It is claimed that the defendant was not prejudiced by the charge. That it was made at the close of the case, and probably did not produce the slightest impression on the minds of the jurors. We cannot, however, assume this to be so, for without the presumption there was no sufficient evidence to justify the verdict. As we have already seen, it does not appear how or in what manner Riordan came to be caught between the elevator and the hatch; whether or not he had exercised the precautions of a prudent man does not appear, and there are no sufficient facts from which it can be inferred. He had light so that he could see the elevator; there was plenty of room thereon on which he could select his own place to stand; as it was ascending to the deck of the vessel it was approaching the light of noon-day; the elevator raised slowly at its ordinary speed; the apparatus was safe and in perfect order, and had he not in some unexplained manner got outside of the platform of the elevator he would not have been injured. It consequently follows that it was only by presuming that he had not omitted the precautions of a prudent man that the verdict upon this branch of the case could be sustained.

"But again, there is no claim that there was any defect in the machinery or in the operation of the elevator. It was in order, and the manner of its operation was well known and understood by the deceased. The only claim of negligence on the part of the defendant is that it neglected to have a gangwayman to stand at the hatchway and give the signals to the winchman to raise and lower. It is not, however, claimed that the hoisting of the elevator was done at an improper time or

that the starting was the proximate cause of the injury.   On the contrary it affirmatively appears that Riordan himself gave the signal to hoist.    It is not, therefore, apparent how the presence of a gangwayman would have prevented the accident unless he could have seen down the hatchway of the elevator and observed the position of Riordan in time to stop it before the injury was inflicted.    We do not understand that the master is charged with the duty of employing a servant to watch another servant when he is riding upon an elevator.    It does not, therefore, appear that the injury was the result of any negligence on the part of the defendant.

"The order should be affirmed and judgment absolute ordered against the appellant upon the stipulation."

*George William Hart, Jr.*, for appellant.

*William N. Cohen* for respondent.

HAIGHT, J., reads for affirmance.
All concur.
Order affirmed and judgment accordingly.

---

EMMA M. HOWARTH, Respondent, *v.* JOHN H. HOWARTH, as Administrator, etc., Appellant.

(Argued February 27, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 9, 1890, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

*S. M. Lindsley* for appellant.

*A. M. Beardsley* for respondent.

Agree to affirm; no opinion.
All concur.
Judgment affirmed.